## THE PEOPLE OF THE STATE OF CALIFORNIA *v.* JAMES GARNETT.

WHAT CONSTITUTES THE OFFENSE OF SELLING LAND TWICE, AS DEFINED IN THE ONE HUNDRED AND THIRTY-SECOND SECTION OF THE ACT CONCERNING CRIMES AND PUNISHMENTS.—To justify a conviction of the offense defined in the one hundred and thirty-second section of the Act concerning crimes and punishments, it is necessary to charge in the indictment and prove at the trial: first—the first and second sales, barter, or disposal of the land, as therein specified ; and second—that said second sale, barter or disposal of the land was for a valuable consideration, and was made fraudulently—that is, with intent to defraud either the first or second purchaser.

IDEM.—In such case, where the second sale was made to parties at their request, and after being fully informed by the grantor of the fact and the tenor of the first sale : *Held*, that the second sale was not fraudulent within the meaning of the statute.

APPEAL from the County Court of Sacramento County.

The following is a copy of the indictment against the defendant, under which he was convicted, to wit:

"The said James Garnett is accused by the Grand Jury of the County of Sacramento, California, by this indictment, * * * of the crime of selling land twice, committed as follows: The said James Garnett, on the seventh day of April, A. D. eighteen hundred and sixty-eight, at the county and State aforesaid, did bargain and sell to one John Barrett those certain lots of land in the City and County of Sacramento, and State aforesaid, more particularly designated and described upon the official map or plat of said city as Lots Numbers Four and Seven, in the block or square bounded by J and K and Eighteenth and Nineteenth streets, and that the said James Garnett did afterwards, to wit: on the fifteenth day of April of the year aforesaid, the above described lots for a valuable consideration, feloniously, knowingly, and fraudulently again sell and dispose of to William Muldrow, A. G. Waterhouse, and J. C. Babcock, there being, contrary to the form of the statute in such case made and provided," etc.

The defendant appealed.

The other facts are stated in the opinion of the Court.

*P. Dunlap,* and *J. W. Coffroth,* for Appellant.

· The verdict is against the evidence. Neither Muldrow, Waterhouse, and Babcock, nor the public, were injured, nor was any injury to any of them intended by defendant. (Act concerning Crimes and Punishments, Sec. 132, Woods' Dig. 350; *Rex* v. *Jenner,* 13 East. 228; Woods' Dig., Art. 1,869; 7 Humphreys, 150; 5 Barb. 203; 2 Gray, 72; 1 Leading Criminal Cases, 9.)

*Jo Hamilton, Attorney General,* for the People.

If the proofs show an antecedent sale, barter or disposal of the lands by appellant, which were subsequently

sold by him to Muldrow, Waterhouse, and Babcock, the offense is complete under the statute. All the authorities upon transactions of a fraudulent character are to the effect that in order to constitute the act a crime it is not necessary that fraud be actually effected. It is sufficient if it might be effected, or had a tendency to have such effect. (1 Whar. Am. Cr. L., Sec. 297; 2 Whar. Am. Cr. L., Secs. 1,493, 1,428, 1,439, 1,452; Addison, 44; Strange, 901; 1 Lord Raymond, 737.)

By the Court, Sanderson, J.:

The indictment in this case was found under the one hundred and thirty-second section of the statute in relation to crimes and punishments. That section is found in the twelfth subdivision of the statute which treats of "offenses committed by cheats, swindlers, and other fraudulent persons," and reads as follows: "Any person or persons after once selling, bartering, or disposing of any tract or tracts of land, town lot or lots, who shall again knowingly and fraudulently sell, barter, or dispose of the same tract or tracts of land, town lot or lots, or any part thereof, or shall knowingly and fraudulently execute any bond or agreement to sell or barter or dispose of the same land, or lot or lots, or any part thereof, to any other person or persons for a valuable consideration, every such offender, upon conviction thereof, shall be punished by imprisonment in the State Prison not less than one nor more than ten years."

Cheats which are leveled against public justice, as judicial acts done without authority in the name of another, and frauds which affect the Government and the public at large, as rendering false accounts by persons in official positions, writing false news, selling unwholesome provisions, and using false weights and measures, were indictable at common law. But cheats and frauds not calculated to affect the public in any way, and committed in the course of private transactions, and affecting only the parties concerned, as by lying and false

representations, were not indictable at common law. (2 Russ. on Crimes, 275, *et seq.*) This limited scope of the common law proved inadequate to the protection of society against cheats, swindlers, and other fraudulent persons. So various statutes were from time to time passed, as occasion required, to counteract and hold in check the fraudulent inventions and contrivances of that class of persons. Accordingly the statute of 13 Eliz., c. 5, entitled "An Act against Fraudulent Conveyances, Deeds, Gifts, Alienations, etc.," was passed, and it was thereby made a criminal offense to convey lands, tenements, hereditaments, goods, or chattels, and the like, with intent to hinder and delay creditors and others of their lawful actions, debts, damages, penalties, and the like. This statute of 13 Eliz. is substantially embodied in the one hundred and twenty-ninth section of the statute of this State in relation to crimes and punishments. Next came the statute of 27 Eliz., c. 4, which made it a criminal offense for any person to sell or convey land, and the like, with intent to defraud previous or subsequent purchasers. This latter statute is substantially incorporated in the one hundred and thirty-second section of the statute of this State in relation to crimes and punishments, which is the section under which the indictment in this case was found. (2 Russ. on Crimes, 314, *et seq.*)

We have thus referred to the origin of our statute with a view to its interpretation, it being said that its meaning is obscure, and for the same purpose we also refer to a statute of the State of Ohio upon the same subject, which is in the following words:

"That if any person or persons shall knowingly sell or convey any tract of land without having a title to the same, either in law or equity, by descent, devise or evidence by a written contract, or deed of conveyance, with intent to defraud the purchaser, every person so offending shall be deemed guilty of a misdemeanor, and upon conviction

thereof shall be imprisoned in the Penitentiary, and kept at hard labor not more than seven years nor less than one year." (1 Rev. Stats. Ohio, 415, Sec. 33.)

Whatever of obscurity there may be as to the true meaning of the statute of this State is due to the fact that it does not, like the statute 27 Eliz., c. 4, and the statute of Ohio, designate the person to be injured by the fraud, and therefore leaves the question open to speculation. The statute 27 Eliz. proceeds upon the theory that either of the purchasers may be defrauded by the second sale, while the statute of Ohio proceeds upon the theory that a purchaser from one who has no title is the only person who can be injured by the transaction. The English statute proceeds upon the true theory, wherever registry laws, like that of this State, are in force. If the second purchaser purchases in good faith, and for a valuable consideration, and puts his deed on record before the first deed is recorded, he will hold the land as against the first purchaser, (Registry Act, Sec. 26,) and cannot, therefore, be defrauded by the transaction. In that case the first purchaser will have become the victim of the fraud.

On the other hand, if the first deed be first recorded, the second purchaser becomes the victim. From the nature of the case, then, only one of two parties can be injured by the transaction, but it may be either of them, according to circumstances. The statute of this State adopts the theory of the English statute, but not its precision, while the statute of Ohio would seem to fall short of providing for all of the evil consequences which may follow upon the performance of the act which is prohibited.

The only persons who could, under any circumstances, have been injured by the alleged fraudulent act of the defendant, were Barrett, who was the first purchaser, and Muldrow, Waterhouse, and Babcock, who were the second purchasers.

To constitute the offense charged in this indictment, it

must appear that there was: first, a sale and conveyance to Barrett; second, a sale and conveyance to Muldrow, Waterhouse, and Babcock, for a valuable consideration; third, that the latter sale was made fraudulently, that is to say, with intent to defraud either Barrett, or Muldrow, Waterhouse, and Babcock. The fraudulent character of the transaction must not only be averred, but proved; and it is claimed on the part of the defendant that the testimony not only fails to show a fraudulent intent, but emphatically negatives the idea that there was any. The point is well taken. There is no conflict whatever in the evidence. It shows that the defendant sold and conveyed, for a valuable consideration, to Barrett. There is no pretense but that the deed was sufficient in law, and passed the entire interest of the defendant in the land to Barrett. Barrett could not, therefore, be defrauded by a subsequent conveyance, unless first recorded. Barrett's conveyance was duly recorded, and the conveyance to Muldrow, Waterhouse, and Babcock, was not recorded at any time, or at least had not been up to the time of the trial. When Muldrow, Waterhouse, and Babcock proposed to purchase, they were told by the defendant, and otherwise informed, according to their own testimony, that he had sold and conveyed to Barrett, and the deed was of record. No deceit or fraud was practiced by the defendant, either by misrepresentation or suppression of facts. What advantage or benefit Muldrow, Waterhouse, and Babcock expected to derive from the purchase, it is impossible to conjecture. But, be that as it may, it is certain that under the circumstances they were not and could not be damaged or injured in consequence of their purchase, for they purchased with full knowledge of all the facts. There is not, in our judgment, the slightest ground for declaring the transaction fraudulent on the part of the defendant. If there was any fraud designed, it must have been on the part of Muldrow, Waterhouse, and Babcock. So far as the defendant was concerned, he seems to have acted, not only in the utmost good faith, but with unusual prudence and caution, for he refused

to do a harmless act, until advised by counsel, whom he consulted, that he could do so without any violation of the law.

The instructions of the Court left the law as well as the facts to the jury, and it is quite evident that the jury did not correctly interpret the statute.

Judgment reversed and remittitur ordered to issue forthwith.

Mr. Justice RHODES expressed no opinion.