---

# In re WEED.

### (No. 1,744.)

(Submitted December 23, 1901. Decided January 13, 1902.)

*Attorney—Disbarment—Sale of Realty—Subsequent Transfer —Fraudulent Intent—"Or" Construed to Mean "and"— Deceit— Accusation—Verification.*

26  241
s26  508

26  241
28  265

26  241
s30  457

26  241
33  445

1.    Compiled Statutes of 1887, Fourth Division, Sec. 200, declaring that any person disposing of land, and thereafter knowingly "or" fraudulently again

disposing of it to another person, for a valuable consideration, shall be guilty of a felony, being designed only to prevent the defrauding of one or the other purchaser, should be read as if "and" instead of "or" were used; and a petition in disbarment proceedings, alleging that respondent sold lands to petitioner, agreeing to convey on payment of the price in installments, after payment of part of which respondent deeded the land to another party, and subsequently refused to convey to petitioner, but not alleging that respondent intended to defraud any one; that the second transfer was for value; that petitioner had tendered the amount still due, or that the subsequent transfer was such that respondent was unable to procure the title for petitioner upon tender of the remainder of the price,— did not charge a violation of the statute rendering respondent liable to disbarment, under Code of Civil Procedure, Sec. 402, providing that an attorney who is guilty of any crime, deceit, malpractice, or misdemeanor may be disbarred.

2. The fact that respondent received payments after having conveyed to the third party, and did not inform petitioner of such conveyance, did not show that he was guilty of deceit; such action being entirely consistent with a purpose to obtain title for petitioner on payment of the full purchase price.

3. Under Code of Civil Procedure, Sec. 420, providing that the accusation in disbarment proceedings must be verified by the oath of some person that the charges are true, charges verified upon information and belief will not be considered.

PROCEEDING for the disbarment of Elbert D. Weed, on accusations filed by Theodore A. Mayer. The accused filed written objections to the sufficiency of the charges. Objections sustained.

*Mr. James Donovan, Attorney General, amicus curiae.*

*Messrs. McConnell & McConnell, for Weed.*

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On December 4, 1901, one Theodore A. Mayer, appearing in person in this court, presented a written accusation verified by his own oath, containing certain charges of fraud and deceit against Elbert D. Weed, a member of the bar of Montana, and asking for an order that the name of said Weed be stricken form the roll of attorneys and counselors at law. The accusation contains five separate counts. The first involves a transaction between the accuser and Weed, and charges, in substance, that on December 7, 1894, the said Weed made a written contract with Mayer, under the terms of which he sold and

agreed to convey to Mayer 80 acres of land situate in Lewis and Clarke county, for the sum of $800, upon payment by the latter of $125 down, $200 on or before January 15, 1895, $175 on or before March 1, 1895, and $300 on or before December 1, 1895; that at the date of the contract Weed held the legal title to the land; that on April 17, 1895, Mayer made the payments of $200 and $175 which fell due on January 15 and March 1, 1895, respectively, and that the receipts for these sums were dated as of the times at which the respective payments should have been made; that Mayer did not have the contract recorded, for the reason that he had implicit confidence in Weed, and for the reason that he did not know this was necessary for the protection of his rights; that on or about April 2, 1895, the said Weed conveyed the land described in the contract to one Luther F. Smith by deed which was put upon the records of Lewis and Clarke county on April 15, 1895; that Weed did not at any time notify Mayer that the land had been conveyed, but that, on the contrary, he received payments from Mayer amounting to $375 after the deed of April 2 was executed and delivered to Smith; that thereafter, on August 28, 1895, Weed wrote Mayer that he would be ready in a short time to make the title good; that Mayer did not learn of the transfer of the land by Weed until September 12, 1901, when one Jennie Smith Heath, as grantee of Smith, demanded from Mayer possession of the premises; that during all the time after his said transfer to Smith the said Weed concealed the fact of the transfer, and led Mayer to believe that he would be able to convey to Mayer according to the terms of their agreement; that during all of said time the said Mayer resided upon the land, expending large amounts of money and labor in improving it, having full confidence that he would finally receive the title thereto from Weed; that now he has learned that Weed is not the owner of the land and cannot convey it to him; that Weed refuses to refund to him the money paid under the terms of the contract; that he refuses to convey the title; that Mayer has been compelled to enter into an agree-

ment with Jennie Smith Heath by which he occupies the land as her tenant, and has thus lost, not only the amount paid Weed, but also the labor and money expended in improving the land; and that by reason of the lapse of time the said Weed cannot now be prosecuted for the crime thus committed. The remaining four counts contain charges growing out of transactions between Weed and other persons, some being charges involving his personal character, and others his honesty and integrity as an attorney and counselor at law. The allegations in the first count are verified upon personal knowledge of the accuser; the other counts are verified upon information and belief, and are not supported by sworn statements from the persons having knowledge of the facts. The accused, reserving his right to controvert the truth of the charges, as permitted by the statute (Code of Civil Procedure, Sec. 423), has filed written objections to their sufficiency to put him on trial. To the first count objection is made, among others, that it does not charge the accused with any deceit, malpractice, crime, or misdemeanor, and, generally, that it does not allege sufficient to show the accused guilty of violating any of the provisions of Section 402 of the Code of Civil Procedure defining the causes for which an attorney and counselor may be removed from his office. The only objection made to the other charges is that they are verified upon information and belief only, and not upon the knowledge of the accuser or any other person. The sufficiency of the facts alleged in them to warrant an order of disbarment is not questioned.

The attorney general has appeared by request of this court as *amicus curiae,* and has filed a written argument in support of the charges. He concedes the contention of the accused that the accusation attempts to present a cause which falls within the class contemplated by Subdivision 5 of Section 402, *supra,* and that if the facts alleged do not show the commission of such a crime or misdemeanor, or such acts of deceit as imply moral turpitude in the accused, the charge is not sufficient, in substance, to warrant an investiga-.

tion. Two questions, therefore, must be determined: (1) Whether the charge in the first count is sufficient in substance; and (2) whether the verification, upon information and belief only, as to the other counts, meets the requirement of the statute. We are of the opinion that both must be answered in the negative.

1. The part of Section 402, *supra*, pertinent to this discussion, is the following: "An attorney and counselor may be removed or suspended by the supreme court * * * (5) who is guilty of any deceit, malpractice, crime or misdemeanor." The purpose and intent of this provision was considered by this court in the case of *In re Wellcome*, 23 Mont. 140, 58 Pac. 45, and the application to be made of it is stated thus: "Subdivision 5 is broad enough in its language, and sufficiently comprehensive in substance, to embrace all public offenses, wheresoever committed, by attorneys, and to clothe the court with jurisdiction of an accusation imputing to an attorney the commission of any crime or misdemeanor wherever the offense of itself involves or the circumstances of its perpetration reveal the existence of moral turpitude, or the facts attending it evince such gross misconduct as exhibits his unfitness to remain in the profession. The fifth subdivision, notwithstanding its ungrammatical construction, seems to have been enactetd *ex industria*, to the end that the court may purge the bar of those attorneys whose characters, as illustrated by the evidence establishing the truth of the charges preferred, lack the attributes of morality which are an essential to admission, and which should be required as a continuing condition of the right to practice." In other words, when an attorney is shown to have committed a crime or misdemeanor, attended by such circumstances as imply moral turpitude, or when he has been guilty of such gross misconduct falling short of actual crime that it must have been the result of a depraved nature or immoral habits, rendering him unworthy of the confidence of his fellow men, he should be deprived of the right to remain in the profession, just as the right to enter it would have been denied

him had he been shown to possess the same attributes of character at the time he applied for admission.   This construction was approved, and the reasons in support of it stated at some length, in a subsequent opinion upon another phase of the same case (*In re Wellcome*), reported in 23 Mont., at page 213, 58 Pac. 47, and was the basis of the final judgment therein (*Id.* 23 Mont. 450, 59 Pac. 445).

That no crime is charged in this count is clear.   Section 200 of the Fourth Division of the Compiled Statutes of 1887, which were in force at the time the conveyance to Smith is alleged to have been made, reads as follows:

"Sec. 200.   Any person or persons after once selling, bartering, or disposing of any tract or tracts of land, town lot or lots, or executing any bond or agreement for the sale of lands, or town lot or lots, who shall again knowingly or fraudulently sell, barter, or dispose of the same tract or tracts of land, or town lot or lots, or any part thereof, or shall knowingly or fraudulently execute any bond or agreement to sell or barter, or dispose of the same land, or lot or lots, or any part thereof, to any other person or persons, for a valuable consideration, every such offender, upon conviction thereof, shall be punished by imprisonment in the territorial prison not less than one year, nor more than five years."

If we substitute the conjunctive "and" for the disjunctive "or" connecting the words "knowingly" and "fraudulently," this section is made identical, except in the extent of the penalty, with Section 132 of the Act of the legislature of California of 1850 in relation to crimes and punishments.   Like many other provisions of our Codes, the section quoted was adopted from the California Act, though we find similar provisions among the criminal statutes of other states.   The purpose of the legislation is to declare it a felony to sell, barter, or dispose of lands, or to make an agreement therefor, for a valuable consideration and with fraudulent intent, after having once sold them, or made an agreement to sell them, to another.

The construction to be given to the phrase "knowingly or

fraudulently" presents more difficulty. This is not encountered in the California Act, and disappears from our own if we read "and" instead of "or." Under the former the offense was sufficiently charged if it was alleged that the second sale, bartering, disposition, or agreement was made with intent to defraud. (*People v. Garnett,* 35 Cal. 475, 95 Am. Dec. 125.) We think "or" should be read "and." This conclusion is based both upon the history of the legislation and upon a consideration to be hereafter noticed. The California section was adopted from the statute of 27 Elizabeth, Chapter IV (*People* v. *Garnett, supra.*) The mischief sought to be prevented by the Act was, among others, a second disposition of lands already disposed of, with intent to defraud either the first or second purchaser. By express terms, it designated the person to be injured by the fraud as either the first or second purchaser. The California statute as well as our own left this to speculation. But the supreme court of California, having the section under consideration in *People* v. *Garnett, supra,* held that under a proper construction of it, in view of the mischief sought to be remedied, the only person who could be injured was the first or second purchaser, and that it was sufficient if it be charged that the fraud was intended to injure either. We may remark, in passing, that the California Act of 1850 was amended under the Code as adopted in 1872 (California Penal Code, Sec. 533), and that the amended section was incorporated in the Penal Code of Montana of 1895 as Section 935. The purpose of the amendment was to make clear the designation of the person to be injured by the fraudulent sale.

The essence of the offense, under all these statutes, is, however, a second sale of the same land, for value, with intent to defraud. The section (200) of the Compiled Statutes quoted is found in the chapter entitled "Offenses Committed by Cheats, Swindlers and Other Fraudulent Persons," and the act denounced by it as an offense is thus classed with a number of offenses, each of which requires a specific fraudulent intent.

The same is true of Section 935 of the Montana Code of 1895, referred to.

Looking, therefore, to the origin and purpose of the legislation, it seems clear that, in order to complete any offense falling within the purview of the statute, the second sale or disposition of lands must be made, not only with full knowledge of the prior conveyance, but also with a fraudulent—that is, a deliberately planned—purpose and intent to deceive, and thereby gain an unlawful advantage. This view would require "or" to be read "and." It is strengthened by the additional consideration that, if the disjunctive be allowed to stand, with its ordinary signification, the statute would render every second sale of lands by the same person for a valuable consideration a felony, whether it be fraudulently made or not; for it is hardly conceivable that such a second sale could be made by the same person without knowledge of any previous sale made by him. To illustrate: If A. should sell to B. by a good and sufficient deed, which was properly put on record, and then should sell to C., after fully informing C. of the former sale to B., A. would not be guilty of an offense, within the meaning of the statute. This is the identical case considered in *People v. Garnett, supra*, wherein it was held that under such circumstances no offense was committed, because it appeared that there was no fraudulent intent.

While we should, ordinarily, be reluctant, to say that the legislature did not intend to denounce as an offense an act which clearly falls within the letter of the statute, we do not hesitate to do so when the act in question is in itself without harmful effect or tendency, and it is reasonably clear that the legislature did not intend to prohibit it. We shall therefore read the statute as identical in the particular mentioned with the California statute, and construe it accordingly.

To make out the offense, it must be alleged and proven: (1) That a sale and conveyance, or an agreement therefor, have been made; (2) that a second sale and conveyance, or an agreement therefor, have been made for a valuable consideration;

and (3) that such second sale has been knowingly made, and with a felonious intent to defraud either the first or second purchaser.

The facts set forth in the first count of the accusation fall very far short of these requirements. So far as appears therefrom, there was no intent to defraud either Mayer or Smith by the transfer to Smith. The conveyance to Smith may have been upon conditions and stipulations preserving all of Mayer's rights, or with such reservations as would enable Weed to procure title for Mayer upon a tender by the latter of the remainder of the purchase price. It is nowhere alleged that the conveyance was intended to defraud any one, nor that it was for a valuable consideration. It is alleged that Weed has refused to convey the title to Mayer; but this he had a perfect right to do, so long as Mayer was in default in making payment under the contract. There is no allegation that a tender has been made, nor any reason stated by way of excuse. While we do not wish to be understood as saying that the charges in such cases as the one presented should be made with all the technical precision required in an indictment or information, nevertheless the accused is entitled to know with what particular offense he is charged, so that he may have opportunity to meet it with his proofs. It is therefore incumbent upon the accuser to state, in substance, the crime upon proof of which he asks the order of disbarment to be made.

The facts stated in this count do not show any such deceit practiced by Weed as would warrant the conclusion that he is so far unworthy of confidence that he should be deprived of his office. There is, as we have seen, an absence of any allegation charging directly that he is not now in position to obtain the title for Mayer, whenever the remainder of the purchase money is tendered and a deed demanded. The failure on the part of Weed to mention the transfer to Smith when the payments were made in April, 1895, is entirely consistent with a purpose then and still entertained by him to make good his agreement whenever he should be lawfully required to do so. Any repre-

sentation then or afterwards made to Mayer that he would be able to convey the title, so far as the contrary appears from the charges, may have been perfectly consistent and truthful. Before this concealment could be held to be deceitful and fraudulent, it should appear that it was made in order to obtain the payments from Mayer, Weed knowing at the time that he had put it out of his power to fulfill his obligations under the contract.

The gravamen of the charge seems to be the injury suffered by Mayer. It does not distinctly appear whether Mayer was in possession of the land at the time of the conveyance to Smith. Therefore his rights and duties in the premises are not before us for consideration at this time.

2. The form of the verification of the accusation is as follows: "Theodore Mayer, being first duly sworn, on oath deposes and says: · That he is the above-named petitioner; that he has read the foregoing petition, and knows the contents thereof; and that the facts therein stated are true of his own knowledge, except as to such matters as are therein stated upon information and belief, and as to those matters he believes it to be true. Theodore A. Mayer." Specific objection is made to it as to counts 2, 3, 4, and 5, on the ground that it does not meet the requirements of Section 420 of the Code of Civil Procedure. This section provides: "The accusation must state the matters charged, and be verified by the oath of some person to the effect that the charges therein contained are true." The language of this section is clear and explicit, and, construing it according to its manifest meaning, the accusation must be supported by the oath of some one having knowledge of the facts upon which it is based. It requires but little consideration to arrive at the conclusion that the legislature did not intend that the time of this or the district court should be taken up with the investigation of charges based upon mere hearsay or rumor. Otherwise the way would be open to every discontented litigant to prefer a charge against an attorney based upon information, and the result would be a serious in-

terruption to the ordinary business of this court. Furthermore, every attorney would be liable at any time to be called to account and subjected to the annoyance of such proceedings against him, and thus be made to suffer in his reputation by reason of them. The accuser is not a party to the proceeding. Therefore the rule governing the ordinary verification of a pleading does not apply. Neither is there any analogy between this proceeding and an ordinary prosecution by a county attorney under his official oath. Here the law is put in motion by a private citizen, and, just as where an application is made to the district court by a private citizen for an order requiring the county attorney to file an information in a particular case (Penal Code, Sec. 1384), it may be invoked only by a statement of facts based upon knowledge. The provision in question was adopted from the California Code. The supreme court of that state has considered it in two cases, and the conclusion reached supports our view. (*In re Hotchkiss*, 58 Cal. 39; *In re Hudson*, 102 Cal. 467, 36 Pac. 812.) It was also considered somewhat by this court in the case of *In re Wellcome*, 23 Mont. 213, 58 Pac. 47, and the rule laid down in the cases cited was there impliedly approved.

3. As heretofore stated, the section of the Compiled Statutes quoted was supplanted by Section 935 of the Penal Code of 1895. The latter section extends the penalty to a maximum of ten years in the state prison. Nothing said herein is to be construed as an intimation that a prosecution could or could not have been maintained after the adoption of the present Code for an offense committed while the older section was in force.

The objections are sustained, with leave to amend the accusation, in accordance with the views herein expressed, and attach a proper verification, within twenty days from this date; otherwise, the proceeding will be dismissed.