JOHN A. LA TOUR v. S. E. STONE, Sheriff.

190 So. 704

Division A

Opinion Filed August 1, 1939

682

*William W. Judge* and *Scarlett & Futch,* for Petitioner;
*George Couper Gibbs,* Attorney General, and *Thomas J. Ellis,* Assistant Attorney General, and *Murray Sams,* State Attorney,. for Respondent.

BUFORD, J.—This is a habeas corpus proceeding. The matter is before us on motion to quash the return and discharge the petitioner. The petitioner attacks the information as being void and charging no offense against the laws of the State of Florida.

The information is as follows:

"IN THE NAME AND BY THE AUTHORITY OF THE STATE OF FLORIDA: MURRAY SAMS, State Attorney for the Seventh Judicial Circuit of the State of Florida in and for Volusia County, prosecuting for the State of Florida, in the said county, under oath, information makes that FRANK V. B. COUCH and GORDON MONTGOMERY of the County of Volusia and State of Florida, in the county and State aforesaid, now are and since January 10th, 1938, continuously last past, have been Commissioners of the City Commission of the City of Daytona Beach, a municipal corporation in Volusia County, Florida.

"That the said Frank V. B. Couch and Gordon Montgomery are and have been guilty of malpractice in their said offices, in this, that they did under color of their said offices, obtain sums of money on dates from persons and in amounts as follows:" Then follows descriptions of amounts of money with the dates and from whom the sums are alleged to have been received.

Then follows: "* * * aggregating in all the sum of Eleven Thousand Three Hundred Fifty-four and 68/100 ($11,354.68) Dollars, of the value of Eleven Thousand Three Hundred Fifty-four and 68/100 ($11,354.68) Dollars,

for their personal profit and gain and that John La Tour who from January 10th, 1938, to June 10th, 1938, was Building and Electrical Inspector of the said City of Daytona Beach and who since June 10th, 1938, has also continuously been a Commissioner of the City Commission of the aforesaid City of Daytona Beach, and W. P. Preer, who since January 10th, 1938, has continuously been City Manager of the aforesaid City of Daytona Beach, late of the County of Volusia aforesaid, at the time of the committing of the crime aforesaid with force and arms at and in the county aforesaid and State aforesaid, were then and there unlawfully and feloniously present, and did unlawfully and feloniously aid and abet, counsel, hire and otherwise procure the said Frank V. B. Couch and Gordon Montgomery to do and commit the said crime in the manner and form aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Florida."

The question to be determined is whether or not the information charges an offense either under Sections 5024 R. G. S., 7126 C. G. L., or 5025 R. G. S., 7127 C. G. L., or under Section 5354 R. G. S., 7489 C. G. L.

Section 5024, R. G. S., 7126 C. G. L., is as follows:

"The common law of England in relation to crimes, except so far as the same relates to the modes and degrees of punishment, shall be of full force in this State where there is no existing provision by statute on the subject."

Section 5025 R. G. S., 7127 C. G. L., provides for penalties in cases coming within the purview of the former section.

Section 5354 R. G. S., 7489 C. G. L., is as follows:

"Any officer of this State who wilfully charges, receives or collects any greater fees than he is entitled to charge,

receive or collect by law, or who is guilty of any malpractice in office not otherwise especially provided for, shall be punished by imprisonment not exceeding one year, or by fine not exceeding five hundred dollars."

. The information cannot be upheld under the latter section because the allegations thereof show that the persons charged are not officers of this State.

Section 15 of Article XVI of our. Constitution provides:

"No person holding or exercising the functions of any office under any foreign ·Government, under the Government of the United States, or under any other State, shall hold any office of honor or profit under the government of this State; and no person shall hold or perform the functions of, more than one office under the government of this State at the same time; Provided, notaries public, militia officers, county school officers and commissioners of deeds may be elected or appointed to fill any legislative, executive or judicial office."

In Attorney General, etc., v. Connors, 27 Fla. 329, 9 Sou. 7, in construing the effect of this Constitutional provision, we said:

"It is contended for the respondent that Section 1 of Chapter 3607, entitled: 'An Act to amend Section 9, of an Act to dissolve municipal corporations,' etc., approved February 12th, 1885, which provides, among other things, that 'it shall be the duty of the sheriff for the county in which such city shall be situated to perform the duties of marshal for such provisional. municipality, and to appoint, subject to the approval and removal by the Board, such members of policemen as may be authorized by the Board,' etc., is obnoxious to that clause of Section 15 of Article XVI of the Constitution of 1885, which provides that "no person shall hold, or perform the functions of more than one office

under the government of this State at the same time.' And in this connection it is urged for the respondent that a city marshal is a State officer in the sense of the constitutional provision invoked, and that to put the performance of the duties appertaining to his office upon the sheriff of a county, comes within the constitutional inhibition above quoted. With this contention of the respondent's counsel we cannot agree; and it seems to us that the plain meaning of the language used in the clause of the Constitution invoked clearly negatives this theory. The language of the Constitution is: 'No person shall hold, or perform the functions of, more than one office under the government of this State at the same time.' The inhibition is aimed solely and entirely against offices held under or whose duties appertain to the government of the State. After careful and exhaustive search we have been unable to find any authority that holds that the government of municipalities forms any part of the government of the State as such, considered in the broad sense of the term 'State government.' The government of the State as such is reared upon and provided for in all of its departments by the Constitution, but nowhere in our Constitution are the governments of municipalities or their officials either created or established as any part of our State government, but their very creation, together with all provisions for 'their government' are reserved to the legislative branch of the State government as erected by the Constitution. Section 8 of Article VIII of the Constitution provides that, 'the legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time.' From this provision it will be seen that to the legislature is reserved the power, not only to create, but to *abolish* munici-

pal governments. It could hardly be contended that our Constitution intended to clothe the Legislature with the power to wipe out of existence any part of the great framework of State government; yet such would be the inference, were we to hold that the government of municipalities formed, strictly speaking, any part of the government of the State. Again, Section 14 of Article XVI, Constitution of 1885, provides as follows: 'All State, county and municipal officers shall continue in office after the expiration of their official terms until their successors are duly qualified.' From this distinct denomination of officers as being State, county and municipal, we think our Constitution clearly recognizes a contradistinction between State officers, county officers .and municipal officers. County officers being in express terms created and provided for by the Constitution of the State as part of the machinery of the State's government in their respective counties, are to be regarded, strictly speaking, as officers of the State.

"Again, in enumerating what courts shall constitute the judicial power 'of the State,' the Constitution, Article V, Section 1, says: 'The judicial power of the State shall be vested in a Supreme Court, circuit courts, criminal courts, county courts, county judges and justices of the peace.' In this specific enumeration and grouping of the courts that are to be considered as constituting the judicial power or branch of the State government as such, there is a striking absence of any mention of municipal courts, the creation of which is also reserved to the Legislature in Section 34 of Article V of the Constitution. Had it been the intention of the framers of our Constitution to have the officers of a municipality considered as officers 'under the government of the State,' certainly in this specific mention of the courts in whom the judicial powers of the State was to be

lodged, so important a municipal official as one exercising the jurisdiction and powers of a court within the municipality would have been specifically included as part of the State's judicial power. While the officers of a municipality can be, and are, in a confined and limited sense, considered as officers of the State, in that they are recognized by the laws of the State as being clothed with certain official powers and duties to be exercised inside the lines of certain circumscribed territorial limits within the State; and in the proper exercise of such official powers and duties, are protected by the strong arm of the State's government, still they are incidents, auxiliaries and agencies only in their relation to the State's government, and have no place in the State's government, as such, considered in its broad and comprehensive sense. Their official authority and power is confined strictly within the territory of their municipalities, and is further limited to things that pertain strictly to muncipal and no State affairs. And if the Legislature of the State should exercise its constitutional power to abolish the government of every municipality within her borders, the State's government as contemplated by the Constitution, would remain as such, just as complete and perfect as before, though perhaps not so efficient in the localities affected by such abrogation."

When the legislative body confined the purview of Section 5354 R. G. S., 7489 C. G. L., to "any officer of this State" it limited the application of the statute to officers of the State, which includes both State and county officers. But, as clearly shown by the opinion, *supra,* does not include municipal officers.

It, therefore, follows that if the Information charges any offense it may be found to be an offense under the common law. The information purports to charge Couch and Mont-

gomery with the crime of extortion, and to charge La Tour as principal in the second degree with the commission of such offense. In the laws of England (Earl of Halsbury), Vol. IX, Criminal Law and Procedure, Sec. 954, *et seq.*, 481-482, it is said:

"A public officer is guilty of extortion who, from improper motive and under color of office, takes from any person any money or valuable thing which is not due from such person at the time when it is taken.

"Extortion is a common law misdemeanor, punishable by fine or imprisonment without hard labor, and removal from office, and is triable at quarter sessions.

"To constitute the offense of extortion there must be a guilty mind, i. e., an intention to obtain some payment or advantage to which the offender knows he is not entitled. A mere mistake in demanding or receiving a fee does not constitute extortion."

And in Section 967, p. 485, it is further provided that, "Any public officer is guilty of a common law misdemeanor who commits a breach of trust, fraud or imposition in a matter affecting the public, even although the same conduct, if in a private transaction, would, as between individuals, have only given rise to an action."

In the Common Law of England by Odgers and Odgers, Volume 1, page 182, 183, it is said:

"If any public officer, in the pretended exercise of the duties of his office, illegally and from some improper motive takes from any person against his will any money or valuable thing which is not then due from that person, he is guilty of extortion. This is a high misdemeanor, punishable on information or indictment in the discretion of the court with fine to any amount, imprisonment to any extent, or both, and also with removal from office.

"Every public officer commits a misdemeanor who, in the discharge of the duties of his office, commits any fraud or breach of trust affecting the public, whether such fraud or breach of trust would have been criminal or not if committed against a private person."

In Stephens Commentaries on the Laws of England (15th Ed.), Vol. IV, p. 221, the following principle is found:

"Lastly, *extortion* is an abuse affecting the administration of justice. It consists in any official (e. g., the registrar or bailiff of a county court) unlawfully taking, by colour of his office, from any man, any money or thing of value, that is not due to him, or more than is due, or before it is due. The punishment for this misdemeanor is fine and imprisonment; and sometimes a forfeiture of the office.

In Dive v. Maningham, 1 Plowden 60, 68, 75 Eng. Rep. 96, 108, the court said:

"As if an officer will take more for his fees than he ought, this is done *colore offici sui,* but yet it is not part of his office, and is called extortion, which is no other than robbery, but it is more odious than robbery, for robbery is apparent, and always hath the countenance of vice, but extortion, being equally as great a vice as robbery, carries the mask of virtue, and is more difficult to be tried or discerned, and consequently more odious than robbery."

In 16 C. J., Criminal Law, Sec. 23, p. 65-66, it is said: "In addition to these specific crimes the common law is sufficiently broad to punish as a misdemeanor, although there may be no exact precedent, any act which directly injures or tends to injure the public to such an extent as to require the State to interfere and punish the wrongdoer, as in the case of * * * frauds and cheats of a public nature or

against which common prudence cannot guard, as distinguished from mere private frauds and cheats * * *."

In People v. Garnett, 35 Cal. 470, 95 Am. Dec., 125, the Court said:

"Cheats which are levied against public justice, as judicial acts done without authority in the name of another, and frauds which affect the government and the public at large, as rendering false accounts by persons in official positions, writing false news, selling unwholesome provisions, and using false weights and measures, were indictable at common law."

In Commonwealth v. Miller, 94 Pa. Super. 499, defendant, a troop captain of the State highway patrol, was charged with malfeasance in office, in that he secured the withdrawal of an information against a man charged with driving while intoxicated, although there was ample evidence to warrant the information. The Court, in its opinion, made the following statement:

"The offense of malfeasance in office is similar to common law extortion in some respects. Both offenses involve an abuse of public justice and both can be committed only by a public officer. Extortion at common law is the unlawful taking by any officer, by color of his office, of any money or thing of value that is not due him, or more than is due, or before it is due. In general, it may be said that any officer whether he be a Federal, State, municipal, or a judicial officer, and every other person occupying an official or quasi official position, may be guilty of this offense: Com. v. Saulsbury, 152 Pa. 554. Convictions of a policeman of extortion at common law were sustained in Com. v. Ruff, 92 Pa. Superior Ct. 530, in Com. v. Norris, 87 Pa. Superior Ct. 61, and in Com. v. Wilson, 30 Pa. Superior Ct. 26. There would seem to be no valid reason why one

exercising the functions performed by defendant should not be held to be such a public officer as can be held guilty of malfeasance in office at common law. In our opinion he was such a public officer. Assuming, however, that the position occupied by defendant did not rise to the dignity of a public office, we have no difficulty in concluding that he is still indictable at common law. 'All such crimes as especially affect public society are indictable at common law. The test is not whether precedents can be found in books, but whether they injuriously affect the public police and economy'; Com. v. McHale, 97 Pa. 407, 410. The common law is sufficiently broad to punish as a misdemeanor, although there may be no exact precedent, any act which directly injures or tends to injure the public to such an extent as to require the State to interfere and punish the wrongdoer, as in the case of acts which injuriously affect public morality, or obstruct, or pervert public justice, or the administration of government: 16 Corpus Juris, Sec. 23, page 65, citing Republica v. Teischer, 1 Dallas 335; Com. v. Sharpless, 2 S. & R. 91, and Barker v. Com., 19 Pa. 412."

In 46 C. J., Officers, Sec. 345, p. 1049, it is said:

"At common law a failure or neglect of an officer to perform a ministerial duty imposed upon him by law renders him guilty of a misdemeanor; and it would seem that, notwithstanding the provisions of a statute which have been disobeyed are, as respects the public, merely directory, the neglect of the officer to observe them may be a misdemeanor. Where, however, the duty which has not been performed, is one involving discretion, the failure to perform it is not *per se* an indictable offense in the absence of wilful and corrupt motives. If a public officer, intrusted with definite powers to be exercised for the benefit of the community, wilfully abuses or fraudulently exceeds them,

he is punishable by indictment. To constitute an indictable offense of misbehavior in office, it is not essential that pecuniary damage should have resulted to the public by reason of an officer's irregular conduct, or that the officer should have acted from corrupt motives."

In the case of Commonwealth v. Mitchell, 3 (*Bush*) Ky. 25, 96 Am. Dec. 192, the Court appended splendid notes from which we quote with approval:

"Extortion. In a general sense extortion signifies any oppression under color of right; but technically it is the corrupt demanding and receiving by an officer, by color of his office, of money or thing of value, that is not due at all, or more than it due, or before it is due: Co. Lit. 368 b; Bac. Abr., tit. Extortion; Com. Dig., tit. Extortion; 1 Hawk P. C. c. 68, sec. 1; 4 Bla. Com. 141; 2 Bishop's Crim. Law, Sec. 390; Desty's Crim. Law, Sec. 84; 2 Wharton's Crim. Law. Sec. 2519; People v. Whaley, 6 Cow. 661-663; Commonwealth v. Bagley, 7 Pick, 279; Commonwealth v. Dennie, 7 Thach. C. C. 165, 173; Williams v. State, 2 Sneed, 160, 162; Cross v. State, 1 Yerg. 261; United States v. Waitz, 3 Saw. 475; United States v. Deaver, 14 Fed. Rep. 595, 597. The definition of the California Penal Code, Section 518, is broader. It was regarded at the common law as a heinous offense. The offender was subject to indictment or information; and the punishment was fine and imprisonment, and sometimes forfeiture of office. See Co. Lit. 368b; Bac. Abr., tit. Extortion. Com. Dig., tit. Extortion; Hawk P. C. c. 68, sec. 5; 4 Bla. Com. 141."

"Offending person must be officer.—The law has never confined this offense to any particular class of officers. Any person clothed with official privileges and duties may be punished for extortion. 2 Bishop's Crim. Law., Sec. 392. Thus justices of the peace; Rex. v. Seymour, 7 Mod. 382;

State v. Maires, 33 N. J. L. 142; Cutter v. State, 33 *Id.* 125; Regina v. Tisdall, 20 U. S. Q. B. 272; sheriffs and their deputies: Commonwealth v. Bagley, 7 Pick 279; Hescott's case, 1 Salk. 330; constables, State v. Merritt, 5 Sneed 67; jailers; The principal Case; in some jurisdictions, lawyers admitted to practice; Adams v. Tertenants of Savage, Holt. 179; Troy's case, 1 Mod. 5; Tannery Croxall, 17 N. J. L. 332; contra, Wilcox v. Bowers, 36 N. H. 372; collectors of taxes, Regina v. Buck, 6 Mod. 306; persons who preside over ecclestiastical courts: Smythe's Case, 6 Palmer 318; clerks of courts: Rex v. Baines, 6 Mod. 192; and see Commonwealth v. Rodes, 6 B. Mon. 171; and other officers; Smith v. Mall, 2 Rob. 263; Rex v. Burdett, 1 Ld. Raym. 148; State v. Burton, 3 Ind. 93; Commonwealth v. Hagan, 9 Phila. 574, may commit the offense. An officer defacto as well as an officer *dejure* may be liable. 2 Bishop's Crim. Law, Sec. 392; and see State v. McEntyre, 3 Ired. 171, 174; White v. State, 56 Ga. 385, and even an offense analogous to extortion may be perpetrated by an unofficial person, who falsely pretends to be an officer; Serlestad's Case, Latch, 202.

"Taking by Color of Office Necessity.—A taking under color of office is of the essence of the offense. The money or thing received must have been claimed or accepted in right of office, and the person paying must have yielded to official authority; 2 Bishop's Crim. Law 393; Collier v. State, 55 Ala. 125; Ming v. Truett, 1 Mont. 322, 326. Therefore, it is not extortion if an officer receives a compensation or fee for services which are not his official duty to perform; Collier v. State, Ming v. Truett, *supra;* Dutton v. City, 9 Phila. 597."

"Act Must Proceed from Corrupt Motive.—The money or other thing of value must have been wilfully and cor-

ruptly demanded and received; 2 Bishop's Crim. Law, 396; Respublica v. Hannum, 1 Yeates 71; Commonwealth v. Hagan, 9 Phila. 574, 578; White v. State, 56 Ga. 385. Therefore, if it be honestly demanded and received under a mistake as to legal rights, the guilt of extortion will not be incurred: Cleveland v. State, 34 Ala. 254; Leeman v. State, 35 Ark. 438; S. C. 37 Am. Rep. 44; Commonwealth v. Shed, 1 Mass 227, 229; Commonwealth v. Dennie, Thach. C. C. 165, 175; State v. Cutter, 36 N. J. L. 125; State v. Porter, 3 Brev. 175; Henry v. Tilson, 17 Vt. 479; Haynes v. Hall, 37 Id. 20; and see Triplett v. Munter, 50 Cal. 644. So where the jury found that the defendant took more than his legal fees, but did not take them corruptly, such finding is equivalent to a verdict of acquittal: State v. Bright, 2 Car. Law Rep. 634."

"Money or Other Thing of Value To Be Obtained.—To constitute extortion at the common law, there must be the receipt of money, or some other thing of value; 2 Bishop's Crim. Law, Sec. 401; 2 Wharton's Crim. Law, Sec. 2522. A mere agreement to pay will not be sufficient: id; Commonwealth v. Cony, 2 Mass. 523; Commonwealth v. Pease, 16 Id. 91, 93; Commonwealth v. Dennie, Thas. C. C. 165, 175; Rex v. Burdett, 1 Ld. Raym. 148, 149; but the taking of a note by the defendant and the receipt of the amount of it when due, are sufficient to constitute the offense; Rex v. Higgins, 4 Car. & P. 247."

"Indictment.—The technical words to be employed in an indictment for extortion are 'extort' and by 'color of office,' 2 Bishop's Crim. Proc., Sec. 358; but it is a sufficient averment of the corrupt intent to allege that the defendant 'extorsively' took the unlawful fee: Leeman v. State, 35 Ark. 438; S. C., 37 Am. Rep. 44; and to charge that the defendant unlawfully, corruptly, deceitfully, extorsively and

by color of his office' without the word 'wilfully' is sufficient at least after verdict: State v. Cansler, 75 N. C. 442. The indictment should be certain in every material allegation or charge: State v. Brown, 12 Minn. 490. Thus it is not sufficient if the indictment allege that the illegal fees were taken 'by color of office' without showing by color of what office: *Id."*

"In an indictment for extortion where nothing was due, there must be an averment that nothing was due, and if the charge be for taking more than was due, the indictment must show how much was due; 2 Bishop's Crim. Proc. 258; State v. Coggswell, 3 Blackf. 54; People v. Rust, 1 Caines. 133; State v. Brown, 12 Minn. 490, 492; Halsey v. State, 4 N. J. L. 324; Regina v. Tracy, 6 Mod. 30; compare State v. Stotts, 5 Blackf. 460; Spence v. Thompson, 11 Ala. 746. An indictment which states in one place that thirty-two cents was extorsively taken, and in another that sixteen cents of that sum was really due, is sufficient; Emory v. State, 6 Blackf. 106. The indictment must show with explicitness that the fees taken by the officer were greater than those allowed by law, it not being sufficient to allege that they were so; state v. Maires, 33 N. J. L. 142. It seems, however, not material to prove the exact sum as laid in the indictment; Rex v. Burdett, 1 Ld. Raym. 148, 149; Commonwealth v. Dennie, Thac. C. C. 165, 175.

In *Ex parte* Amos, 93 Fla. 5, 112 Sou. 289, we held

"The doctrine of *ejusdem generis* applies to Section 5354, Revised General Statutes, which requires that the meaning to be given to the general words 'any malpractice in office not otherwise provided for' is influenced by the words of limited meaning used in denouncing the offense committed by officers of the State, who wilfully charge, receive or

collect greater fees for any service than the law provides for such service."

The information in the instant case fails to allege that Couch and Montgomery, or either of them, did either wilfully or corruptly or extorsively or unlawfully receive any of the sums of money alleged to have been received by them. This, however, is not a testing of the sufficiency of the information in this case by motion to quash but the attack is by habeas corpus.

In Jackson v. State, 71 Sou. 332, it was held:

"The right to attack an information by writ of habeas corpus is more limited than is permitted in motions to quash and in arrest, and may avail only when the offense charged does not constitute a crime under the laws of the State, by reason of the unconstitutionality of the statute invoked or when there is a total failure to allege a crime under any statute; inartificiality in pleading will not avail.

"Upon habeas corpus an information will be upheld as charging malpractice in office, when it alleges that a county commissioner received a money consideration for purchasing certain property for the county, even though the information fails to state that it was corruptly done."

While the information is far from perfect and should be held insufficient on motion to quash under the authorities hereinbefore cited, we do not think that it so entirely fails to charge the defendant with a criminal offense as to be held void in habeas corpus proceedings.

It, therefore, follows that the motion to quash the return must be denied and the petitioner be remanded.

It is so ordered.

TERRELL, C. J., and WHITFIELD, BROWN and CHAPMAN, J. J., concur.

Justice Thomas not participating as authorized by Section 4687, Compiled Geieral Laws of 1927, and Rule 21-A of the Rules of this Court.

Brown, J. (concurring).—While concurring in the above. enlightening opinion, I do not mean to subscribe to all the statements made in the opinion in other cases which are cited and quoted from. For additional authorities on this general subject of common law offenses see the concurring opinion in State *ex rel*. Williams v. Coleman, 131 Fla. 872, 180 So. 360.