MARY CORLETT, as Executrix under the Last Will and Testament of John B. Corlett, deceased, *Plaintiff in Error,* vs. GEORGE W. OLIVER, *Defendant in Error.*

144 So. 877.

145 So. 886.

En Banc.

Opinion filed December 15, 1932.

Petition for rehearing denied February 14, 1933.

404

*Walker & Willson,* for Plaintiff in Error;

*V. A. Sims* and *R. E. Bradley,* for Defendant in Error.

PER CURIAM.—This was a suit at law for the recovery of an amount alleged to be due George W. Oliver, plaintiff below, for services rendered as attorney for one John B. Corlett, deceased, in connection with the defense of an injunction suit pending in Polk County, wherein H. E. Fairchilds and others, were complainants, and John B. Corlett, J. W. Carson and Crooked Lake Florida Farms Company, a corporation, were defendants. The jury returned a verdict for plaintiff in the sum of $943.92 and from the judgment entered consequent thereon, this writ of error was taken by the defendant below, as representative of the estate of John B. Corlett.

The evidence showed that the defense of the injunction suit in which Corlett, Carson and Crooked Lake Florida Farms Company were defendants, was a joint undertaking, and that the defendants consulted and retained Oliver as their attorney under such circumstances that their liability for the payment of Oliver's attorney's fee became a joint obligation of John B. Corlett, J. W. Carson, and Crooked Lake Florida Farms Company. See 6 R. C. L. 878.

Afterward, John B. Corlett died and Mary Corlett, the plaintiff in error, and defendant below, became his executrix. The controlling point that must be determined by us on this appeal, is whether or not, assuming the joint contractual obligation of Corlett, Carson and Crooked Lake Florida Farms Company to pay Oliver's attorney's fee, because they had become jointly liable on an im-

plied promise to pay a reasonable fee to the attorney for the services rendered by him in their joint undertaking to defend, Oliver, the obligee may maintain an action against the executrix of Corlett, deceased, to recover the amount of the fee?

At common law it was a settled doctrine that in case of joint obligations, if one of the joint obligors died before the obligation was discharged, the representative was in law discharged, and the surviving obligors alone could be sued. Lee vs. Puleston, 102 Fla. 1079, 137 Sou. Rep. 709. Except as changed or modified by the provisions of the constitution and laws of Florida, the common law is still in force in this state. Section 87 C. G. L. 71 R. G. S.

But in Brill vs. Jewett, 262 Fed. 935, it was held by the Circuit Court of Appeals for this Federal Circuit, that Section 4211 C. G. L., 2571 R. G. S., had abrogated the common law rule that the death of one joint obligor discharges his representative and leaves the surviving obligor or obligors alone liable, and in Lee vs. Puleston, supra, we expressly adopted and approved the construction thus placed upon our statute by the Circuit Court of Appeals for the Fifth Circuit. The intention of the statute in providing for the survival of all actions except those enumerated was to prevent their enforceability being destroyed by the death of a party, as was the case at common law. The statute therefore had the effect of abrogating the common law rule as to the effect of the death of a party in cases of joint contractual liability, such as we have in the case now being considered by us.

We therefore have a situation created by the statute, under which the liability of the deceased joint obligor is preserved from being extinguished by his death, as was the case at common law, but which nevertheless cannot be enforced in a single suit brought against the survivor and the personal representative of his deceased co-oblig-

or, jointly. Such is the effect of the ruling made by this Court in Lee vs. Puleston, 137 Sou. Rep. 709, supra, where it was expressly held that a suit on a joint note could not be maintained *jointly* against the surviving joint obligors and the legal representative of the deceased joint obligor, because the one is to be charged *de bonis testatoris,* the other *de bonis propriis,* forms of judgment that the rules of common law governing the law courts are not flexible enough to permit to be included in the same judgment.

The solution for the procedural complication thus presented, is to permit the joint liability of a deceased joint obligor to be reduced to judgment in a separate suit brought against the personal representative of the deceased joint obligor, for the purpose of adjudicating the fact and the amount of such liability as has survived under the statute, against such deceased, but to stay execution or enforcement of any judgment so rendered until the asserted joint liability is also reduced to judgment against the surviving joint obligor or obligors, unless it be shown that such surviving joint obligors are beyond the reach of process, or incapable of being sued because of their bankruptcy, death or other cause which would preclude suit against such survivors.

The foregoing rule is in line with the procedure followed by the Federal Court in Brill vs. Jewett, where recovery was allowed to stand against the representative of one of two joint obligors on a note, upon a showing in that case that the other (surviving) obligor had subsequently died, leaving no one in existence subject to being sued as a surviving joint obligor, inasmuch as there had been no appointment of a personal representative of the subsequently deceased survivor, at the time the suit was brought against the representative of the obligor who had first died.

The judgment appealed from should be affirmed with leave to have such further proceedings as may be in accord with the foregoing rule, with reference to the other surviving joint obligors.

Affirmed, with leave for further proceedings in accordance with this opinion.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

ELLIS, J., concurs specially.

ELLIS, J. (Concurring in affirmance).—I agree to the affirmance of the judgment. There is no question of a joint liability involved in the case as presented by the pleadings. The evidence does not clearly or distinctly establish the existence of a joint liability. Upon an issue as to whether J. B. Corlett and Joe Carson incurred the obligation to the plaintiff jointly and not jointly and severally the evidence was obscure and confused and would have been insufficient to support the affirmative side of such a proposition, but there was no such issue.

The declaration was in two counts. The first was upon a simple contract between Corlett and the plaintiff for the payment by the former to the latter of a definite sum of money for legal services rendered by the plaintiff. It was not a common count for a quantum meruit but upon a definite and specific promise by Corlett to pay a definite sum of money. The count recites at some length the consideration for such promise but it was not thereby converted into a common count upon a quantum meruit for services rendered. The second count was a common count though not in compliance with the statute upon an account stated.

The pleas were never was indebted, which applied to the second count; never promised as alleged, which applied to the first count; payment, release, the statute of limita-

tions and the statute of non-claim—the last four applied to both counts—and a plea of set-off.

There was no evidence in support of the first count, no evidence of a definite sum due and none whatever of a promise to pay it. There was evidence in support of the second count upon an account stated.

Accounts were rendered by Oliver to Corlett, Carson and Crooked Lake Florida Farms Company both by letter and statements as early as April, 1927, and again to Carson and Corlett in January, 1928, by letter and a presentation of the account in the same form, by way of a statement and claim to the County Judge in September, 1930.

Upon the plea of set-off the plaintiff was entitled to recover, the second count being established by the evidence without contradiction.

There has been much discussion upon the subject of the survival of the right of action against a deceased joint obligor on a contract liability which is most interesting as well as edifying, but of no application to this case. There was likewise much evidence upon the subject of the reasonableness of the attorney's fees which was unnecessary.

The plaintiff is an attorney at law. Mr. Corlett and Mr. Carson came into his office and engaged his services in a cause that had been commenced by Fairchilds et al. against Corlett et al. Mr. Oliver agreed to represent the defendants in the litigation. After his services were concluded he estimated the value of them to be $3,000, and rendered a statement of the account to Corlett, Carson and Crooked Lake Florida Farms Company, deducted payments of $250. made by Corlett and $350. paid by R. A. Bennett and another check for $250. paid by Corlett and requested the payment of the balance from which he wanted deducted $750., which he owed Mr. Corlett.

There was evidence that his services were rendered at the request of Mr. Corlett.

Whether the case of Brill v. Jewett, 262 Fed. Rep. 935, announces a correct proposition of law upon the survival of an action against the estate of a deceased joint obligor on a contract liability has no place in this case.

The judgment should be affirmed.

PER CURIAM.—The law, as construed in the original opinion in this case, filed December 5, 1932, is to the effect that where a joint liability on a contract exists, and one of the jointly contracting parties dies before suit, that the liability of the deceased joint contractor does not cease to exist, as at common law, but that such liability may still be enforced as a joint liability, because of Section 4211 C. G. L., 2571 R. G. S., of our statutes.

While the suit against the representative of deceased joint obligor, cannot be joined with an action against the surviving obligors (Lee v. Puleston, 192 Fla. 1079, 137 Sou. Rep. 709), on the joint obligation, and while we held in the original opinion that the procedural difficulty could be met by permitting the liability of a deceased joint obligor to be reduced to judgment in a separate suit brought against the personal representative of the deceased joint obligor, for the purpose of adjudicating the fact and amount of such liability, as has survived under the statute, against such deceased, with stay of execution of enforcement of any judgment rendered solely against the representative of the survivor, until the claim was also reduced to judgment against the surviving joint obligors, a showing that the surviving joint obligors are beyond the reach of process, or otherwise incapable of being sued, will be authority for the trial court to refuse to stay the execution on the judgment against the representative of the deceased joint obligor, because the

reason for the stay fails, and consequently the stay itself fails with it.

With this clarification of the former opinion of this Court the petition for rehearing should be denied and mandate issued as heretofore ordered.

Rehearing denied.

DAVIS, C.J., AND WHITFIELD, TERRELL AND BUFORD, J.J., concur.