287 So.2d 1 (1973)
STATE of Florida, Appellant,
v.
William C. EGAN, Appellee.
No. 43364.
Supreme Court of Florida.
December 12, 1973.
*2 Robert L. Shevin, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., for appellant.
J. Leonard Fleet, Hollywood, for appellee.
BOYD, Justice.
This cause is before us on appeal from the County Court, Broward County. The trial court (Broward County Circuit Judge McCauley, sitting by designation), in its order, passed upon the validity of Section 775.01, Florida Statutes, 1971, F.S.A., giving this Court jurisdiction of the direct appeal under Article V, Section 3(b)(1), of the Constitution of the State of Florida, F.S.A.
*3 The facts of the case are as follows:
On November 29, 1972, the grand jury, in and for Broward County, Florida, returned an indictment charging appellee in three counts with what can be characterized generally as the common-law offense of nonfeasance. A motion to dismiss was filed challenging the constitutionality of Section 775.01, Florida Statutes, F.S.A., "... for reason of the vagueness and ambiguity... ." On January 23, 1973, nunc pro tunc, the 16th day of January, 1973, the lower court entered its order striking down Section 775.01 on the ground that it was "... in violation of Sections 9 and 16 of the Constitution of the State of Florida... ." In its order, the court stated that "... for the first time in the one-hundred forty-four (144) year history of the Statute the Court is faced squarely with the constitutional question." The controlling issue, as stated by the lower court, was whether Section 775.01 is too vague and indefinite to sufficiently inform a defendant of the charge placed against him. One of the "numerous reasons" which influenced the lower court to declare the statute unconstitutional was the following:
"The need and reason for common law crimes has passed and ceased to exist, and the necessity for F.S. 775.01 is finished. The Statute should be discarded. The great human principals (sic) handed down through the ages of common law still exist, but the procedure of criminal law indictment requires no more the burden of word of mouth and conflicting, ambiguous phraseology."
It appears that the order appealed from has a two-fold bottom, to-wit: vagueness and obsolescence. Before embarking upon a discussion of the theories advanced by the lower court in support of its order, some preliminary remarks are deemed appropriate. The legislative antecedents of Section 2.01, Florida Statutes, expressly made the common law of England a part of the law of this jurisdiction. And for more than 100 years, this common law has been in effect in this jurisdiction, except insofar as it has been modified or superseded by statute. Wester v. Rigdon.[1] In Coleman v. State,[2] this Court noted:
"The common law of England in effect on July 4, 1776, was adopted as the law of Florida and declared to be of full force and effect in this state by the Act of November 6, 1829, § 1 (Comp.Gen.Laws 1927 § 87). This was done by statute and such adoption has been held to have been legal and binding and of full force and effect for more than one hundred years.
"We think it cannot be gainsaid that instead of adopting the common law of England as the law of this state by statute, the Constitution might have as easily and as effectively adopted the general law of any other civilized country to be of force and effect in this state and have provided that the same might be abrogated or changed by statute, provided the Constitution of the United States be not violated."[3]
We know of no better place to start than with the statute. Accordingly, Section 775.01 provides:
"The common law of England in relation to crimes, except so far as the same relates to the modes and degrees of punishment, *4 shall be of full force in this state where there is no existing provision by statute on the subject."
What is there, then, about the above quoted statute that is vague? The statute simply makes the common law of England in relation to crimes, with certain exceptions, the law of this state. Surely, the purpose of all rules relating to the construction of statutes is to discover the true intention of the law. But such rules are useful only in case of doubt and should never be used to create doubt, only to remove it. Where the legislative intent as evidenced by a statute is plain and unambiguous, then there is no necessity for any construction or interpretation of the statute, and the courts need only give effect to the plain meaning of its terms. Alligood v. Florida Real Estate Commission.[4] This Court, in Van Pelt v. Hilliard,[5] held:
"The Legislature must be understood to mean what it has plainly expressed, and this excludes construction. The legislative intent being plainly expressed, so that the act read by itself or in connection with other statutes pertaining to the same subject is clear, certain, and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms. Cases cannot be included or excluded merely because there is intrinsically no reason against it. Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity. If a legislative enactment violates no constitutional provision or principle, it must be deemed its own sufficient and conclusive evidence of the justice, propriety, and policy of its passage. Courts have then no power to set it aside or evade its operation by forced and unreasonable construction. If it has been passed improvidently the responsibility is with the Legislature and not the courts. Whether the law be expressed in general or limited terms, the Legislature should be held to mean what they have plainly expressed, and consequently no room is left for construction... ."[6]
As to the validity of the indictment in the case sub judice which charged appellee with three counts of a common law offense, appellant relies on LaTour v. Stone,[7] and Sullivan v. Leatherman.[8]LaTour was an original proceeding in habeas corpus, in which this Court held that an information could not be upheld, under a statute providing for punishment of any state officer guilty of malpractice in office, *5 because the information, on its face, showed that the persons charged were not state officers. Of course, the petitioner attacked the information as being void and charging no offense against the laws of the State of Florida. However, this Court pointed out that the common law of England in relation to crimes was in full force in this jurisdiction, absent a statutory provision on the subject. The Court then reasoned:
"It, therefore, follows that if the Information charges any offense it must be found to be an offense under the common law. The information purports to charge Couch and Montgomery with the crime of extortion, and to charge La Tour as principal in the second degree with the commission of such offense. In the laws of England (Earl of Halsbury), Vol. IX, Criminal Law and Procedure, Sec. 954, et seq., 481, 482, it is said:
"`A public officer is guilty of extortion who, from an improper motive and under color of office, takes from any person any money or valuable thing which is not due from such person at the time when it is taken.'"
* * * * * *
"`The offense of malfeasance in office is similar to common law extortion in some respects... . In general, it may be said that any officer whether he be a federal, state, municipal, or a judicial officer, and every other person occupying an official or quasi official position, may be guilty of this offense... . There would seem to be no valid reason why one exercising the functions performed by defendant should not be held to be such a public officer as can be held guilty of malfeasance in office at common law... . `All such crimes as especially affect public society are indictable at common law. The test is not whether precedents can be found in books, but whether they injuriously affect the public police and economy'... . The common law is sufficiently broad to punish as a misdemeanor, although there may be no exact precedent, any act which directly injures or tends to injure the public to such an extent as to require the state to interfere and punish the wrongdoer, as in the case of acts which injuriously affect public morality, or obstruct, or pervert public justice, or the administration of government... .'"[9]
In concluding, the Court pointed out that the information did not wholly fail to charge the defendant with a criminal offense. This was so because, although the information was defective for failure to allege an essential statutory allegation, it did charge a crime under the common law of England, which, by virtue of Section 5024, R.G.S., Section 7126, C.G.L., was the law of this jurisdiction. Accordingly, the motion to quash the return was denied and the petitioner was remanded.
In Sullivan, the common law indictment was challenged in a habeas proceeding on the ground that the indictment failed to sufficiently charge petitioner with a crime. This Court emphasized that a common law indictment must be in such positive and direct terms as to put the defendant on notice of what he is charged with and enable him to prepare his defense. We once again affirm this reasoning. The indictment in Sullivan was struck down because, as this Court pointed out:
"[W]hether common law or statutory, the offense must be charged in direct and specific terms and that it was wilfully or corruptly done or omitted."[10]
It is here emphasized that the indictment in the case sub judice is not open to this attack.
On page 4 of the order appealed from, the lower court indicated that a search was made of the common law of *6 England in an effort to find where the offense of nonfeasance was discussed. We emphasize, however, that American courts, particularly Florida appellate courts, do not look solely to English cases to determine what the common law is. The words used in our statute, "common law of England" refer to such common law, not only as declared by the English courts but also as declared by the courts of the American states. Coleman v. Davis.[11] Appellee was given specific direction in the indictment as to where the common law could be found which described the offense with which he was charged. The pertinent part of each count of the indictment reads:
"... in violation of the common law of England, as enunicated in La Tour v. Stone, (Sup.Ct., Fla. 1939) 190 So. 704 and Sullivan v. Leatherman (Sup.Ct., Fla. 1950) 48 So.2d 836, as adopted by F.S. 775.01 and punishable as provided in F.S. 775.02... ."
We think, however, that the lower court's main objection to Section 775.01 is that the statute does not set forth in express verbiage the common law which is made a part of the law of this jurisdiction. To put it another way, the statute imposes the duty upon the reader thereof to ascertain for himself what the common law is. The opinion of the lower court notwithstanding, there are some things so well known that the legislature may justly assume that the courts will take judicial notice thereof.
The contention of the lower court that the statute does not afford notice of what common law acts are prohibited is not well taken. A similar argument was rejected by this court in Delaney v. State.[12] We quote:
"At oral argument, the State struck what we think to be a most telling blow against the appellant's contention that the statute did not afford him notice that such an act per os was prohibited, and that this court's construction thereof in prior cases could not cure the defect. Pointing out that the statute, without further definition, merely prohibits `* * * the abominable and detestable crime against nature, either with mankind or with beast * * *,' the State logically posed the question whether it is easier for the public, or a defendant, to determine the nature of this crime by researching the history of the common law or the case law of this state. Although the opinions of this court are not always the essence of clarity, and never as lucid as we would have them, in this instance those previously rendered on this subject clearly advise all people ... [what] the ... crime ... includes... . These decisions are certainly more readily available and more easily understood than the common law."[13]
Surely, no legislative adoption is necessary to affirm the existence of the common law. Just as surely, however, it is urged that a statutory enactment is essential to repeal, abrogate, or change the rules or doctrine of the common law. It requires no citation of authority to support the rule that the common law is not to be changed by doubtful implication. Of course, where the implication is obvious, it cannot be ignored. But no statute is to be construed as altering the common law farther than its words and circumstances import. While, admittedly, a court can and should strike down any common law crime that fails to pass constitutional muster, it is emphasized that it is the province of the legislature and not of the court to modify the rules of the common law. The court has no more right to abrogate the common law than it has to repeal the statutory law. In other words, courts may properly extend old principles to new conditions, determine new or novel questions by analogy, *7 and even develop and announce new principles made necessary by changes wrought by time and circumstance. Under our constitutional system of government, however, courts cannot legislate. They cannot abrogate, modify, repeal, or amend rules long established and recognized as parts of the law of the land.
The common law has not become petrified; it does not stand still. It continues in a state of flux. And, its ever present fluidity enables it to meet and adjust itself to shifting conditions and new demands. It has been described as a leisurely stream that has not ceased to flow gently and continuously in its proper channel, at times gradually and imperceptibly eroding a bit of the soil from one of its banks and at other times getting rid of and depositing a bit of silt. In view of our English heritage, it is unthinkable that judicial limbo should be its destiny.
Another basic argument in support of the lower court's action in striking down Section 775.01 is that there is no longer any necessity for the statute and that it should be discarded. This argument seems strange. This is so because the instant case affords an excellent example of the necessity of resorting to the common law for the proper crime with which to charge a defendant. It appears the court below is of the opinion that due process has eliminated the common law, particularly that part which relates to crime. Thus, so argues the court below, "the tail is now wagging the dog, common law eliminates common law: and such should be the living nature of our law." The lower court is apparently of the opinion that because of the allegedly little use made of the common law that there is now no need and reason to retain common law crimes and so same has passed and ceased to exist. Our answer to this line of argument is that a legislative enactment may be repealed only by further legislation and not by time or changed conditions. The repeal of an act cannot be implied from the mere fact that some of the evils provided against it are removed by a subsequent act. Simply stated, the general rule is that a statute is not repealed by nonuse. The argument set forth in the order of the lower court may be a cogent one when addressed to the legislature, yet courts of justice cannot and do not recognize such a policy as a basis for their decision. Whenever a principle of the common law has been once clearly established, the courts of this country must enforce it until repealed by the legislature, as long as there is a subject matter for the principle to operate on, and although the reason, in the opinion of the court, which induced its original establishment may have ceased to exist. Of course, when the rules of the common law are in doubt, or when a factual situation is presented which is not within the established precedents, courts are called upon to determine what general principles are to be applied, and, in so doing, of necessity, must exercise a broad judicial discretion. The courts of this jurisdiction do, and properly so, take into account the changes in our social and economic customs and present day conceptions of right and justice. But the fact remains, as this Court said in Ripley v. Ewell,[14] "When the common law is clear we have no power to change it."[15]
In Ducksworth v. Boyer,[16] this Court had occasion to resort to the common law in holding that a person lawfully confined for civil contempt, who escaped from confinement, could be punished for the common law offense of prison break, even though he was not confined for a misdemeanor or a felony. Clearly, if this Court had not had the right to rely on the common law, then the offender would have been able to violate the law with impunity.
Recently, in Parkin v. State,[17] this Court had occasion, in the determination of a *8 sanity issue, to resort to the common law. We quote:
"The English or common-law rule of insanity as a defense, contained in M'Naghten's Case, supra, proceeds upon the theory that if a man knows the nature or quality of his act and that it is wrong, he has sufficient mental capacity to be responsible for not properly controlling his action. By Fla. Stat. § 775.01, F.S.A., the common law of England in relation to crimes, except as to the modes and degrees of punishment, is of full force where there is no existing provision by statute on the subject. The M'Naghten rule has been recognized and adopted by the Florida court. Davis v. State, 44 Fla. 32, 32 So. 822 (1902). See 6 F.L.P., Criminal Law, § 30."[18]
The foregoing cases we have discussed are representative of those instances wherein appellate courts have had occasion to rely upon the common law as adopted and made a part of the law of this jurisdiction by Sections 2.01 and 775.01. Suffice it to say that the common law has been adopted by legislative act. It has been modified to some extent by subsequent legislation. Surely, if further changes are desirable in the public interest, those changes should come from the legislature.
As we today uphold the validity of Section 775.01, we also, by way of caveat, re-emphasize its proper application in cases such as that sub judice. In LaTour v. Stone, supra, we differentiated between conduct on the part of public officials which was indictable as common law nonfeasance, and conduct which was not:

"At common law a failure or neglect of an officer to perform a ministerial duty imposed upon him by law renders him guilty of a misdemeanor; and it would seem that, notwithstanding the provisions of a statute which have been disobeyed are, as respects the public, merely directory, the neglect of the officer to observe them may be a misdemeanor. Where, however, the duty which has not been performed, is one involving discretion, the failure to perform it is not perse an indictable offense in the absence of willful and corrupt motives. If a public officer, intrusted with definite powers to be exercised for the benefit of the community, willfully abuses or fraudulently exceeds them, he is punishable by indictment. To constitute an indictable offense of misbehavior in office, it is not essential that pecuniary damage should have resulted to the public by reason of an officer's irregular conduct, or that the officer should have acted from corrupt motives."[19]
We emphasize that this statute cannot be used against public officials who exercise their powers of office in ways displeasing to certain segments of the public, unless such conduct directly conflicts with written laws prescribing the obligations of the offices which they hold.[20]
Lastly, we point out that, upon remand of this cause, and subsequent trial, appellee, should he be convicted as charged, would be subject to the penalty provisions of Section 775.02, Florida Statutes, F.S.A., pertaining to punishment of common law offenses:
"When there exists no such provision by statute, the court shall proceed to punish such offense by fine or imprisonment, but the fine shall not exceed five hundred dollars, nor the imprisonment twelve months."
Accordingly, the order of the trial court is quashed, and the cause remanded for further proceedings consistent herewith.
It is so ordered.
CARLTON, C.J., and ROBERTS, McCAIN and DEKLE, JJ., concur.
NOTES
[1] 110 So.2d 470 (Fla.App.1st 1959). See also Ripley v. Ewell, 61 So.2d 420 (Fla. 1952); Croft v. Culbreath, 150 Fla. 60, 6 So.2d 638 (1942); Knapp v. Fredricksen, 148 Fla. 311, 4 So.2d 251 (1941); State ex rel. Williams v. Coleman, 131 Fla. 892, 180 So. 357 (1938); Lewis v. City of Miami, 127 Fla. 426, 173 So. 150 (1937); Corlett v. Oliver, 107 Fla. 403, 144 So. 877, reh. denied, 107 Fla. 403, 145 So. 886 (1932); Waller v. First Savings & Trust Co., 103 Fla. 1025, 138 So. 780 (1931); State v. Jacksonville Terminal Co., 90 Fla. 721, 106 So. 576 (1925); Nolan v. Moore, 81 Fla. 594, 88 So. 601 (1921).
[2] 118 Fla. 201, 159 So. 504 (1935).
[3] 159 So. at 507.
[4] 156 So.2d 705 (Fla.App.2nd 1963). See also State ex rel. Green v. City of Pensacola, 126 So.2d 566 (Fla. 1961); State ex rel. Florida Jai Alai, Inc. v. State Racing Commission, 112 So.2d 825 (Fla. 1959); Ervin v. Capital Weekly Post, Inc., 97 So.2d 464 (Fla. 1957); Gough v. State ex rel. Sauls, 55 So.2d 111 (Fla. 1951); Ross v. Gore, 48 So.2d 412 (Fla. 1950); Smith v. Ryan, 39 So.2d 281 (Fla. 1949); Miami Bridge Co. v. Railroad Commission, 155 Fla. 366, 20 So.2d 356, cert. denied 325 U.S. 867, 65 S.Ct. 1405, 89 L.Ed. 1987 (1945); Clark v. Kreidt, 145 Fla. 1, 199 So. 333 (1940); State ex rel. Southern Roller Derbies v. Woods, 145 Fla. 296, 199 So. 262 (1940); Richardson v. City of Miami, 144 Fla. 294, 198 So. 51 (1940); Maryland Casualty Co. v. Sutherland, 125 Fla. 282, 169 So. 679 (1936); Taylor v. State, 117 Fla. 706, 158 So. 437 (1934); A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157 (1931); Osborne v. Simpson, 94 Fla. 793, 114 So. 543 (1927); State v. Beardsley, 84 Fla. 109, 94 So. 660 (1922); State v. Burr, 79 Fla. 290, 84 So. 61 (1920); Fine v. Moran, 74 Fla. 417, 77 So. 533 (1917); Curry v. Lehman, 55 Fla. 847, 47 So. 18 (1908); Adams v. Dickinson, 264 So.2d 17 (Fla.App.1st 1972); Owen v. Cheney, 238 So.2d 650 (Fla.App.2nd 1970); City of Sarasota v. Burch, 192 So.2d 9 (Fla.App.2nd 1966), cert. quashed 200 So.2d 177 (Fla. 1967); Biddle v. State Beverage Dept., 187 So.2d 65 (Fla.App.4th 1966); Platt v. Lanier, 127 So.2d 912 (Fla.App.2nd 1961).
[5] 75 Fla. 792, 78 So. 693 (1918).
[6] 78 So. at 694-695.
[7] 139 Fla. 681, 190 So. 704 (1939).
[8] 48 So.2d 836 (Fla. 1950).
[9] 190 So. at 707-708. (Citations omitted.)
[10] 48 So.2d at 838.
[11] 120 So.2d 56 (Fla.App.1st 1960).
[12] 190 So.2d 578 (Fla. 1966).
[13] Id. at 582. (Emphasis supplied.)
[14] 61 So.2d 420 (Fla. 1952).
[15] Id. at 423.
[16] 125 So.2d 844 (Fla. 1960).
[17] 238 So.2d 817 (Fla. 1970).
[18] Id. at 819-820.
[19] 190 So. at 709 (Emphasis supplied.)
[20] See generally 63 Am.Jur.2d Public Officers & Employees § 349 (1972).