QUESTIONS: 1. Does a municipality have the power or authority to enact a contraction ordinance where the area in question fully complies with the requirements for annexation as contained in s.171.043, F. S. (1976 Supp.)? 2. If, after the 6-month feasibility study on a petition of 15 percent of the voters in an area designated to be excluded, the council determines that it is not feasible, may a specific finding that the area in question fully complies with s. 171.043, supra, fulfill the requirements of s.171.051(2), F. S.? 3. May an area meeting the criteria for annexation in s. 171.043, supra, be proposed for exclusion by municipal governing bodies? 4. When the council, after the 6-month feasibility study, specifically determines that the area to be excluded meets all the criteria of s. 171.043, supra, can the council set the time and place of a meeting at which the ordinance will be considered, pursuant to s. 171.051(3), F. S.? 5. May the governing body vote not to contract the municipal boundaries under s. 171.051(4), F. S., despite the fact that 15 percent of the qualified voters resident in that area proposed for contraction request a referendum on the question of contraction?
SUMMARY: The contraction procedures provided by s. 171.051, F. S., may be used to exclude only areas found not to meet the characteristics required by s. 171.043, F. S. (1976 Supp.), of areas to be annexed. A municipality is without authority to enact a contraction ordinance, either on the initiative of its governing body or in response to a petition therefor, regarding an area which complies with the annexation characteristics set forth in s.171.043. If, at a meeting called to consider an introduced contraction ordinance, a petition for referendum is submitted pursuant to s. 171.051(4), the governing body must either submit the ordinance to a vote of the qualified voters in the area to be excluded or vote not to contract the municipality's boundaries. Before answering your questions, I would offer the following summary of the contraction procedure provided by s. 171.051, F. S., for exclusion of an area not meeting the requirements for annexation. There are two methods by which initiation of the contraction procedures may be accomplished, and there are two separate petition procedures. Under s. 171.051(1), F. S., a municipal governing body may, on its own initiative, "by ordinance propose the contraction of municipal boundaries, as described in the ordinance, and provide an effective date for the contraction." In the alternative, under s. 171.051(2), F. S., such a contraction ordinance may be proposed by a "petition of 15 percent of the qualified voters in an area desiring to be excluded from the municipal boundaries." If the latter course is taken — proposal of the contraction ordinance by petition — the governing body is required to undertake a feasibility study of the contraction proposed by the petition. Within 6 months from the time the required study is begun by the governing body, that body must do one of two things: It must either initiate contraction proceedings by ordinance pursuant to subsection (1), supra, or reject the petition (in which case the specific facts on which the rejection is based must be stated). Section 171.052(1) (criteria for contraction) clearly provides that "[o]nly those areas which do not meet the criteria for annexation in s. 171.043 may be proposed for exclusion by municipal governing bodies." (Emphasis supplied.) Thus, it would certainly seem that a finding of compliance with s.171.043 would constitute sufficient grounds for rejecting a petition for initiation of contraction procedures. However, a municipal governing body would appear to have broad discretion under the statute to reject any such petition, so long as it specifically states its reasons therefor. The second petition procedure is provided for in s. 171.051(4), F. S. It must be understood that this petition procedure would be available only after the governing body has introduced a contraction ordinance pursuant to subsection (1) of s. 171.051 [either on its own initiative or after conducting a feasibility study pursuant to a petition submitted under subsection (2)]. After introduction of the contraction ordinance and advertisement or public notice thereof pursuant to subsection (3) which, among other things, must include a statement of findings showing the area to be excluded fails to meet the criteria of s. 171.043, supra, the next step is consideration of the contraction ordinance at a meeting of the governing body held for that purpose. It is at this point — the holding of the meeting at which the ordinance is to be considered — that the second petition procedure comes into play. This second procedure, under subsection (4) of s. 171.051, concerns whether or not the contraction ordinance is to be the subject of a referendum submitted to the vote of the "qualified voters of the area proposed for contraction." Section 171.051(4). Such a referendum may be sought by submission at such meeting of a petition requesting a referendum on the question of contraction as prescribed in subsection (4), or, in the absence thereof, such a referendum may be proposed by the governing body on its own initiative under subsection (5). Your first question and your third question (which appear to be the same) are answered in the negative by the language quoted above from s. 171.052(1): "Only those areas which do not meet the criteria for annexation in s.171.043 may be proposed for exclusion by municipal governing bodies." (Emphasis supplied.) This language is quite clear and must be given its plain and obvious meaning. Maryland Casualty Company v. Sutherland, 169 So. 679 (Fla. 1936); Johnson v. Wilson,336 So.2d 651 (1 D.C.A. Fla., 1976). Therefore, the statute precludes a municipal governing body from enacting a contraction ordinance — either on its own initiative or in response to a petition therefor — if the area proposed to be excluded is found to meet the criteria for annexation as set forth in s. 171.043, F. S. (1976 Supp.). This statutory provision also answers, in the affirmative, your second question. That is, a specific finding that the area proposed to be excluded complies with or meets the criteria for annexation in s. 171.043 would certainly be a sufficient specification of the facts or the basis upon which the petition
proposing the contraction ordinance is rejected under s.171.051(2), F. S. Your fourth question is answered in the negative, again by the explicit language of s. 171.052(1), supra. It should be obvious that a specific finding that the area proposed for exclusion meets all the annexation criteria of s.171.043, supra, would, under s. 171.052(1), preclude further action in regard to that area. If the governing body determines that the area does meet the requirements for annexation, it should then reject the petition proposing the contraction, specifying compliance with s. 171.043 as the basis or reason for the rejection. Once the petition is so rejected, there is no statutory requirement that any meeting be noticed or held, and no legal reason exists to call a meeting. Indeed, at this stage of the proceedings, no contraction ordinance has been introduced or noticed and there is no ordinance before the governing body to be considered. Your fifth question is answered in the affirmative. Section 171.051(4), supra, provides clear alternatives, either of which may be followed by the governing body once the proceedings have reached this point [i.e., the study made pursuant to subsection 171.051(2), the ordinance introduced, due and proper notice given, and the meeting held]. If, at this point, a petition for referendum is filed or presented by 15 percent of the qualified voters in the area to be excluded, the statutory alternatives provided by subsection (4) are: . . . the governing body shall, upon verification, paid for by the municipality, of the sufficiency of the petition, and before passing such ordinance, submit the question of contraction to a vote of the qualified voters of the area proposed for contraction, or the governing body may vote not to contract the municipal boundaries. (Emphasis supplied.) The above-quoted language is, in my opinion, sufficiently clear and free from doubt so as to preclude the application of any rules of statutory construction, State v. Egan,287 So.2d 1, 4 (Fla. 1973), and must be given its plain meaning. Maryland Casualty Company v. Sutherland, supra.