Mr. Paul R. Gougelman, III Attorney for City of Cocoa Redevelopment Agency 1825 South Riverview Drive Melbourne, Florida 32901
Dear Mr. Gougelman:
As the attorney for the City of Cocoa Redevelopment Agency you have asked for my opinion on substantially the following questions:
1. Pursuant to s. 163.357, F.S., must an appointed member of a municipal community redevelopment agency reside within the geographic boundaries of the commu nity redevelopment area, or is the member required to be a resident of the municipality within which the community redevelopment agency is located? 2. If the appointed member must reside within the geographic boundaries of the community redevelopment area, does that individual cease to be a member of the agency if he or she changes residence to an area within the municipality but outside the geographic limits of the community redevelopment agency? 3. If the appointed member of a municipal community redevelopment agency need only live within the city limits, may the local government creating the agency, or the agency itself, require the appointed members of the agency to reside within the geographic limits of the community redevelopment area?
In sum:
1. and 2. Section 163.356(3)(b), F.S., establishes residence requirements for the commissioners of a community redevelopment agency and mandates that appointed commissioners must reside in or be engaged in business "within the area of operation of the agency, which shall be coterminous with the area of operation of the . . . municipality . . . ." 3. Neither a municipality nor the community redevelopment agency which it establishes possesses the authority to impose residence requirements for appointed commissioners of the agency in conflict with those residence requirements set forth in s. 163.356(3)(b), F.S.
Your letter states that the City of Cocoa passed an ordinance in the early 1980's to form a redevelopment agency pursuant to s.163.356, F.S. The agency consisted of five members at that time. Subsequently the governing body of the city adopted a resolution, pursuant to s. 163.357, F.S., which increased the board of the redevelopment agency to seven members: five city council members and two appointed members. Your questions are directed to residence requirements for the appointed members of the community redevelopment agency.
Questions One and Two
The Community Redevelopment Act of 1969, codified as Part III of Ch. 163, F.S., was enacted to enable counties and municipalities to eliminate and prevent the development or spread of slums and urban blight, to encourage needed community rehabilitation and to provide for the redevelopment of slums and blighted areas.[1] A municipality, upon a finding of necessity[2] and the need for an agency to function in the municipality to carry out the purposes set forth in the act, may create a body corporate and politic known as a "community redevelopment agency."[3] Such an agency constitutes a public instrumentality and the exercise of powers conferred by the act is deemed to be the performance of an essential public function.[4]
When the governing body of a municipality has adopted a resolution declaring the need for a community redevelopment agency, that body shall, by ordinance, appoint a board of commissioners as the governing body of the agency. The board shall consist of not fewer than five nor more than seven commissioners.[5]
Section 163.356(3)(b), F.S., provides that:
The powers of a community redevelopment agency shall be exercised by the commissioners thereof. A majority of the commissioners constitutes a quorum for the purpose of conducting business and exercising the powers of the agency and for all other purposes. Action may be taken by the agency upon a vote of a majority of the commissioners present, unless in any case the bylaws require a larger number. Any person may be appointed as commissioner if he resides or is engaged in business, which means owning a business, practicing a profession, or performing a service for compensation, or serving as an officer or director of a corporation or other business entity so engaged, within the area of operation of the agency, which shall be coterminous with the area of operation of the county or municipality, and is otherwise eligible for such appointment under this part. (e.s.)
The statute states that members of the community redevelopment agency must reside or engage in business within the area of operation of the agency, which is coterminous with the territorial boundaries or limits of the county or municipality. "Area of operation" is defined to mean "for a municipality, the area within the corporate limits of the municipality."[6] In contrast, a "[c]ommunity redevelopment area" is defined to mean "a slum area, a blighted area, or an area in which there is a shortage of housing that is affordable to residents of low or moderate income, including the elderly, or a combination thereof which the governing body designates as appropriate for community redevelopment. "[7] Clearly then, the area of operation for a municipal redevelopment agency is within the territorial boundaries of the municipality itself, although the community redevelopment area may represent a smaller area within the municipality.[8]
Section 163.356(3)(b), F.S., supra, does not require that the appointed members of the agency reside or engage in business within the community redevelopment area but "within the area of operation of the agency, which shall be coterminous with the area of operation of the . . . municipality . . . ." It is a fundamental rule of statutory construction that, where the legislative intent as evidenced by a statute is plain and unambiguous, there is no necessity for any construction or interpretation of the statute and effect need only be given to the plain meaning of its terms.[9]
Thus, pursuant to s. 163.356(3)(b), F.S., an appointed commissioner of a municipal redevelopment agency must reside or be engaged in business within the area of operation of the agency, that is, within the municipality.
Question Three
You also ask whether a municipality or the redevelopment agency itself may impose a residence requirement which differs from that prescribed by statute for appointed members of a municipal redevelopment agency governing board.
Part III of Ch. 163, F.S., prescribes with particularity the structural organization and powers of community redevelopment agencies, the composition and number of the members thereof and their terms of office. In addition, as discussed above, residence requirements for appointed commissioners of such agencies are set forth. I find no provision in the act which delegates the authority or otherwise authorizes or empowers the city commission to alter the statutorily prescribed residence requirements for appointed commissioners of the community redevelopment agency.[10]
While municipalities possess home rule powers, such powers are not unlimited and in those instances where a municipal ordinance is in conflict with a state statute, the ordinance must fail.[11]
The Legislature has prescribed with particularity the residence requirements for appointed members of the board of commissioners of community redevelopment agencies established pursuant to Part III, Ch. 163, F.S., and has not delegated to the governing body of the municipality the power or authority to alter these requirements. I am, therefore, of the opinion that the City Commission of the City of Cocoa may not impose a residence requirement in conflict with the provisions of s. 163.356(3)(b), F.S.
With regard to the authority of an administrative agency, such as the City of Cocoa Redevelopment Agency, to impose such residence requirements, it is the rule that such an agency possesses no power not granted by statute. Further, any reasonable doubt as to the lawful existence of a particular power sought to be exercised must be resolved against the exercise thereof.[12] Therefore, absent any statutory provision which authorizes a community redevelop-ment agency to impose residence requirements on the appointed commissioners thereof other than those prescribed in s.163.356(3)(b), F.S., it is my opinion that the City of Cocoa Redevelopment Agency may not impose such a requirement.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] Section 163.335(1), F.S.
[2] See, s. 163.355, F.S., setting forth the requirements for the finding of necessity.
[3] Section 163.356(1), F.S.
[4] Id.
[5] See, s. 163.356(2), F.S. And see, s. 163.357(1)(c), F.S., authorizing a governing body which consists of five members to appoint two additional members, prescribing the appointed members terms of office, and stating that "[p]ersons appointed under this section are subject to all provisions of this part relating to appointed members of a community redevelopment agency."
[6] Section 163.340(17), F.S.
[7] Section 163.340(10), F.S.
[8] It is the rule that a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way. Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944); Thayer v. State, 335 So.2d 815, 817 (Fla. 1976). See also, AGO 82-86 concluding in part that "[t]he members of a community redevelopment agency are required to reside in or engage in business within the corporate limits of the municipality or county or the `area of operation' of the agency which is coterminous therewith . . . ."
[9] State v. Egan, 287 So.2d 1, 4 (Fla. 1973); Van Pelt v. Hilliard, 78 So. 693 (Fla. 1918).
[10] See generally, First National Bank of Key West v. Filer,145 So. 204, 207 (Fla. 1933) (authority of public officers to proceed in a particular way or only upon specific conditions implies a duty not to proceed in any other manner than that which is authorized by law); Alsop v. Pierce, supra at note 6. Cf., AGO 84-74 (the governing body of a municipality in establishing a community redevelopment agency pursuant to Part III, Ch. 163, F.S., does not have the authority to alter the composition of the board of commissioners of the agency from that prescribed by statute).
[11] See, City of Miami Beach v. Rocio Corporation,404 So.2d 1066, 1069-1070 (3 D.C.A. Fla., 1981), petition for review denied,408 So.2d 1092 (Fla. 1981), wherein the court stated that "[o]ne impediment to constitutionally derived legislative powers of municipalities occurs when the municipality enacts ordinances which conflict with state law. . . . Municipal ordinances are inferior to state law and must fail when conflict arises"; thus, while "legislation may be concurrent, enacted by both state and local governments in areas not preempted by the state, concurrent legislation enacted by municipalities may not conflict with state law." See also, Rinzler v. Carson, 262 So.2d 661 (Fla. 1972).
[12] State ex rel. Greenberg v. Florida State Board of Dentistry,297 So.2d 628 (1 D.C.A. Fla., 1974), cert. dismissed,300 So.2d 900 (Fla. 1974).