Ms. Mary A. Marshall Alachua County Attorney Post Office Box 2877 Gainesville, Florida 32602-2877
Dear Ms. Marshall:
You have asked for my opinion on substantially the following question:
Does section 125.0104(5)(a)1., Florida Statutes, authorize the use of county tourist development funds for a sports stadium or a sports arena that is owned and operated by a not-for-profit organization, such as the Gainesville Raceway?
In sum:
Section 125.0104(5)(a)1., Florida Statutes, does not authorize the use of county tourist development funds for a sports stadium or arena, such as the Gainesville Raceway, that is owned and operated by a private, not-for-profit organization.
According to your letter, the National Hot Rod Association (NHRA) is a not-for-profit corporation that owns property in Alachua County. The Gainesville Raceway is operated on this property, where the NHRA sponsors and conducts the Gatornationals, a weeklong annual event. This event attracts in excess of 100,000 tourists per year into the county to attend the event. Other events occur at the raceway throughout the year. The Gatornationals and other events at the raceway are open to the public. The NHRA has requested the use of tourist development funds for the raceway facility.
Section 125.0104, Florida Statutes, known as the Local Option Tourist Development Act,[1] authorizes a county to impose a tax on short-term rentals of living quarters or accommodations within the county unless such activities are exempt pursuant to Chapter 212, Florida Statutes.[2]
The purpose and intent of section 125.0104, Florida Statutes, is to "provide for the advancement, generation, growth and promotion of tourism, the enhancement of the tourist industry, and the attraction of conventioneers and tourists from within and without the state to a particular area or county of the state."[3]
Subsection (5) of the act sets forth various purposes for which revenues from the tax may be expended. Pursuant to section125.0104(5)(a)1., such funds may be used:
To acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote one or more publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums, or museums that are publicly owned and operated or owned and operated by not-for-profit organizations and open to the public, within the boundaries of the county or subcounty special taxing district in which the tax is levied. . . . .
You ask whether the language "owned and operated by not-forprofit organizations and open to the public" relates generally to all the facilities mentioned in the statute or applies only to museums.
In 1992, section 125.0104(5)(a), was amended and the following underlined language was added:
To acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote one or more publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums, or museums that are publicly owned and operated or owned and operated by not-for-profit organizations and open to the public, within the boundaries of the county or subcounty special taxing district in which the tax is levied. . . .[4]
The title to Chapter 92-204, Laws of Florida, which added this language states that the purpose of the act was to amend section125.0104, Florida Statutes, "allowing revenues from the tax to be used for certain museums by any county that imposes the tax; providing for expiration of the tax upon the retirement of bonds issued to finance such museums[.]"[5] The final bill analysis for this amendment indicates that the purpose of the bill was "to [authorize the] use of tax revenues for specified purposes related to the operation of museums open to the public, that are either publicly owned or operated or owned and operated by not-for-profit organizations."[6] In determining the meaning of a statute, the primary purpose is to give effect to the intention of the Legislature.[7]
A review of the language of the amendment accomplished by section 1, Chapter 92-204, Laws of Florida, the title to this legislation and a clear statement of the legislative intent for the amendment leads me to conclude that the language of the amendment should be read as an integrated whole rather than as a qualifying phrase to the other facilities named in section 125.0104(5), Florida Statutes. Thus, the statute authorizes the use of tourist development tax funds to "acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote . . . museums that are publicly owned and operated or owned and operated by not-for-profit organizations and open to the public."
Therefore, it is my opinion that section 125.0104(5)(a)1., Florida Statutes, does not authorize the use of county tourist development funds for a sports stadium or arena, such as the Gainesville Raceway, that is owned and operated by a private not-for-profit organization.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Section 125.0104(1), Fla. Stat. (1995).
[2] See, s. 125.0104(3)(a), Fla. Stat. (1995), stating that it is the intent of the Legislature that every person who rents, leases, or lets living quarters or accommodations in "any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium for a term of 6 months or less is exercising a privilege which is subject to taxation under this section. . . ."
[3] See, Ops. Att'y Gen. Fla. 95-71 (1995), 94-12 (1994), 87-16 (1987), and 83-18 (1983).
[4] See, s. 1, Ch. 92-204, Laws of Florida.
[5] And see, s. 1, Ch. 92-204, Laws of Florida, amending subsection (7) of section 125.0104, Fla. Stat. (1992), relating to automatic expiration on retirement of bonds issued for financing these projects.
[6] Final Bill Analysis Economic Impact Statement on CS/HB's 147, 1551 1967, dated March 24, 1992, by the Committee on Tourism, Hospitality Economic Development of the Florida House of Representatives.
[7] See, e.g., People's Bank of Jacksonville v. Arbuckle,90 So. 458 (Fla. 1921), City of St. Petersburg v. Siebold, 48 So.2d 291
(Fla. 1950), and State v. Egan, 287 So.2d 1 (Fla. 1973).